IN THE UNITED STATES DISTRICT COURT

THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CURTIN MARITIME, CORPORATION, a California corporation, | Case No. 6:24-cv-00810-MC |
| Plaintiff, | OPINION AND ORDER |
| vs. | |
| TRADE WEST CONSTRUCTION, INC., a Nevada corporation, ENDURANCE ASSURANCE CORPORATION, a Delaware corporation, | |
| Defendants. | |

_____

MCSHANE, J.:

Defendant Endurance Assurance Corporation ("Defendant") moves to dismiss the third cause of action in Plaintiff Curtin Maritime Corporation's ("Plaintiff," "CMC") Complaint for failure to state a claim upon which relief can be granted. Def.'s Mot. Dismiss, ECF No. 10 ("Motion"). Because Plaintiff plausibly states a claim for relief for some of the damages alleged, the Motion pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff CMC is a California corporation that contracted to supply Defendant Trade West Construction ("TWC") equipment for use on a federal construction project. Pl.'s Compl. 2, ECF

No. 1 ("Complaint").[1] Plaintiff owns a freight barge named LOST PT. and a tugboat named DEBRA C. *Id.* Plaintiff alleges that "[o]n or about February 2, 2022, Defendant TWC contracted with the United States Army Corps of Engineers to repair the Coos Bay North Jetty in Coos County, Oregon." *Id.* (parentheticals omitted) (hereinafter, "Project"). As part of that Project, the Miller Act ("the Act"), 40 U.S.C. § 3131, required TWC to provide a payment bond to secure the Project's contracts. *Id.* On or about February 4, 2022, TWC executed a bond through Defendant Endurance. *Id.* Through both a Performance Bond and a Payment Bond, Defendant Endurance bound itself to the United States "[f]or payment of the penal sum" in the amount of $67,710,750. Complaint Ex. 2, at 1, 3, ECF No. 1-2. The obligation under the Performance Bond was to become "void if the Principal [TWC] [p]erforms and fulfills all the understanding, covenants, terms, conditions, and agreements of the contract[.]" *Id.* at 1. The obligation under the Payment Bond was to become "void if the Principal [TWC] promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract[.]" *Id.* at 3.

On or about January 24, 2023, Plaintiff and TWC entered into a Standard Bareboat Charter ("Charter") and a Standard Towage Agreement ("Towage Agreement") for tug and barge services. *Id.* at 2–3. The Charter and Towage Agreement required Plaintiff to provide the LOST PT. and DEBRA C. for TWC's use on the Project. *Id.* at 3. Plaintiff and TWC later agreed to an addendum to the Towage Agreement ("Addendum"), which provided TWC with access to Plaintiff's loading yard and dock. *Id.* The Charter, Towage Agreement, and Addendum "constituted the supply of labor and materials to Defendant TWC to complete the North Jetty Project for the Corps of Engineers." *Id.* The Charter required TWC to pay the hire cost of the LOST PT. at a rate of $4,000

---

[1] At the motion to dismiss stage, the Court accepts as true Plaintiff's factual allegations. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).

per day for one year. Complaint Ex. 3, at 1, ECF No. 1-3. The Charter also provided that TWC was "obligated to redeliver the [LOST PT.] in the same good condition, repair and working order as upon delivery," exclusive of "ordinary wear and tear," and that "[TWC] shall continue to pay hire until such redelivery has been accomplished." *Id.* at 3. Plaintiff CMC alleges that it performed its obligations under the Charter, Towage Agreement, and Addendum. Complaint 3.

During the Project, the LOST PT. suffered damage. *Id.* at 4. Plaintiff alleges that TWC breached the Charter and Towage Agreement by returning the LOST PT. in damaged condition. *Id.* Under the Charter's terms, Plaintiff argues TWC is accountable for repair of the LOST PT. until the vessel is "restored to the same good condition, repair and working order, less ordinary wear and tear." *Id.* (quoting the Charter). Plaintiff further alleges that "TWC has failed to pay at least eleven outstanding invoices for CMC's tug and barge services: five invoices under the Charter, and four invoices under the Towage Agreement. All costs are currently in excess of $1,139,427.91, with interest and hire continuing to accrue." *Id.* For its part, TWC "[d]en[ies] that the LOST PT. suffered damage beyond normal wear and tear while under the Bareboat Charter to Trade West," and alleges that a survey performed at TWC's request shows the LOST PT. was damaged at the time TWC took possession. Def.'s Answ. 3, 8, ECF No. 9 ("Answer"). TWC alleges that CMC breached the Charter "by failing to provide a barge fit for the purpose contemplated by the Charter" and "by refusing to accept redelivery of the barge when tendered in the same condition as received by Trade West." Answer 9.

Plaintiff alleges three causes of action: two alleging a breach of the Charter and Towage Agreement against Defendant TWC, and one alleging Miller Act liability for Defendant Endurance as TWC's surety. Complaint 4–5. As to the Miller Act claim at issue here, Plaintiff argues that "Defendant Endurance, as surety to TWC's payment bond for the Project, is obligated to pay CMC

for the outstanding costs of labor and materials furnished in furtherance of the Project[.]" *Id.* at 5–6. Defendant Endurance moves to dismiss Plaintiff's Miller Act claim, citing a failure to state a claim under Fed. R. Civ. P. 12(b)(6). Motion 1. Defendant argues that the costs Plaintiff alleges are not recoverable under the Miller Act because they incurred after an alleged breach of contract and not in furtherance of the federal Project. *Id.* at 5–11.

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## DISCUSSION

## I.     Failure to State a Claim

Defendant Endurance moves to dismiss Plaintiff's third cause of action for Miller Act liability, arguing that the damages sought are not recoverable from Defendant because they do not constitute "labor and material" under the Act. Motion 2, 5–11. Plaintiff argues that, under Ninth Circuit precedent, it may recover from Defendant Endurance "to the same extent [Plaintiff] is owed payment from Trade West under the subcontracts." Pl.'s Resp. Mot. Dismiss 6–7, ECF No. 16 ("Response"). As discussed below, the Court finds that Plaintiff plausibly alleges a claim for Miller

Act liability against Defendant Endurance and may proceed with its cause of action to recover amounts due for repairs provided under the Charter. Plaintiff may not, however, pursue a Miller Act claim for lost profits or for services not actually provided for the Project.

### i. Elements of a Miller Act Claim

The Miller Act requires companies performing federal projects to post payment bonds "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract[.]" 40 U.S.C. § 3131. Any person not "paid in full" within 90 days after the labor is completed "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."[2] 40 U.S.C. § 3133(b)(1). To state a claim under the Miller Act, "a material supplier need only prove four elements: (1) the materials were supplied in prosecution of the work provided for in the contract; (2) he has not been paid; (3) he had a good faith belief that the materials were intended for the specified work; and (4) the jurisdictional requisites were met." *U.S. ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984).

Plaintiff sufficiently alleges a Miller Act claim against Defendant Endurance. Plaintiff alleges that: (1) "CMC's tug and barge, loading yard, and dockage services under the agreements constitute the supply of labor and materials to TWC to complete the Project for the Corps of Engineers"; (2) "TWC has failed to make full payment to CMC for its labor and materials," and "Endurance has failed to perform its obligations under the bond to pay TWC's outstanding and unpaid invoices"; (3) the agreements between CMC and TWC "constituted the supply of labor and materials to TWC to complete the North Jetty Project for the Corps of Engineers"; and (4) this

---

[2] The statute previously allowed plaintiffs to recover the "sums justly due," so many cases cited here use that language. *See, e.g.*, *Taylor Constr. Inc. v. ABT Serv. Corp., Inc.*, 163 F.3d 1119, 1122 (9th Cir. 1998). Neither party argues, and the Court has not found, any reason why the slight change to provide instead for "the amount due" should affect the results in this case.

action "arises under the Miller Act, 40 U.S.C. § 3133, which provides that federal court shall be the sole forum for resolution of a civil dispute." Complaint 1, 5–6. Those allegations create a plausible claim for relief under the Miller Act.

### ii.  Costs Recoverable from a Miller Act Surety

The Court now considers which costs Plaintiff may try to recover from Defendant Endurance under the Act. The Miller Act "is highly remedial in nature . . . [and] is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. U.S. ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944). But "such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds." *Id.*

To start, a general contractor's surety is only liable to the extent the general contractor is liable. *Am. Cas. Co. of Reading, Pa. v. Arrow Rd. Constr. Co.*, 309 F.2d 923, 924–25 (9th Cir. 1962) (following the rule "that if [a] principal and a surety are jointly sued and the action fails as to the principal, the surety is for that reason discharged and judgment against it cannot be taken"). The Ninth Circuit has also indicated that a breaching party may not be able to recover for damages that result from that party's breach. *See Mai Steel Serv., Inc. v. Blake Constr. Co.*, 981 F.2d 414, 419 n.8 (9th Cir. 1992) ("In concluding that [the subcontractor] may recover its increased costs in this case, we do not hold that such costs are recoverable regardless of the reason for of [sic] the delay. There may be instances when recovery would be inappropriate, such as when the delay is attributable to the subcontractor's own conduct." (citing *U.S. ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex.*, 942 F.2d 946, 952 n.14 (5th Cir. 1991)).

Further, costs for labor and materials actually expended on a project are recoverable from a Miller Act surety, but lost profits are not. *Mai Steel*, 981 F.2d at 418. In *Mai Steel*, a subcontractor

recovered increased costs attributable to another subcontractor's tardy and defective product shipments, but only the costs that were actually incurred for work that was actually performed. *Id.* at 416–20. The court cited with approval the Fifth Circuit's rule that a subcontractor may recover from a surety "for [the] additional or increased costs *actually expended* in furnishing the labor or materials in the prosecution of the work[.]" *Id.* at 417 (emphasis in original) (citing *Millers Mut.*, 942 F.2d at 952). Under that reasoning, the subcontractor could not recover its lost profits, because "[a] claim for profits does not involve actual outlay and thus falls outside both the letter and the spirit of the Miller Act." *Id.* at 418 (internal quotations, citations, and alterations omitted).[3]

In *Taylor Construction*, the Ninth Circuit broadly held that "the Miller Act clearly requires a surety to pay the entire amount due under the contract when the prime contractor defaults." 163 F.3d at 1120. In that case, a surety argued that it was not required to pay a subcontractor the amount in the subcontract's savings clause because the savings were not "labor" or "material" under the Act. *Id.* Because the statute's language of "sums justly due" referred to the expectation that subcontractors be "paid in full," the court held that "the provider is entitled to be paid in full under the subcontract." *Id.* at 1122. "The Ninth Circuit has consistently followed that method and used the underlying bonded subcontract as the measure of recovery in Miller Act cases." *Id.* (citing *Colvin v. U.S. ex rel. Magini Leasing & Contracting*, 549 F.2d 1338, 1342 (9th Cir. 1977) (basing recovery on "the terms of the contract," but disallowing profit surcharge on rental rates); *U.S. ex rel. A.V. DeBlasio Constr. Inc. v. Mountain States Constr. Co.*, 588 F.2d 259, 262–63 (9th Cir. 1978) (approving quantum meruit damages award to compensate the subcontractor for completed work, but disallowing recovery in excess of the contracted rate)); *see also Travelers Indem. Co. v.*

---

[3] In its Response and at oral argument, Plaintiff suggested that this holding may be limited to sub-sub-contractors, but the language in *Mai Steel* suggests that that reasoning applies with equal force to subcontractors. *See Mai Steel*, 981 F.2d at 418 ("A subcontractor may not recover from the surety, however, any lost profits caused by the delay.").

*U.S. ex rel. Western Steel Co.*, 362 F.2d 896, 899 (9th Cir. 1966) (where contract provided for attorney's fees in the event of a breach, it was "settled that such a contractual obligation . . . becomes part of the compensation 'justly due'").

The court clarified its *Taylor Construction* holding in *Walton Technology*, where it rejected defendants' contention that "coextensive liability between a surety and its principal is in every case defined and limited by the principal's contractual liability." *U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206 (9th Cir. 2002). Rather, "the liability of a surety and its principal . . . is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act." *Id.* Thus, courts asked to determine which costs are recoverable under the Miller Act must look both to the terms of the contract and to the Act itself.

Here, Plaintiff does not detail its alleged costs, and only alleges that the LOST PT. was damaged and that Defendants TWC and Endurance failed to pay eleven outstanding invoices. Complaint 4. Defendant Endurance challenges Plaintiff's attempted recovery of (1) repairs to the LOST PT., (2) Charter hire for the duration of the Charter after TWC terminated it, and (3) consequential damages in the form of hire fees while the LOST PT. is being repaired. Motion 2, 5–11. In essence, Defendant takes issue with all costs assessed after TWC stopped using Plaintiff's services on the Project. Plaintiff relies on *Taylor Construction* and contends that Defendant is liable for all those damages, because "[t]he measure of the recovery . . . is generally the amount owing under the subcontract. This remains true when the subcontractor is seeking amounts unrelated to labor and material provided." Response 3.

The Court notes at the outset that Plaintiff may not be able to recover any damages if Defendant TWC proves, as alleged, that Plaintiff "breached the Charter by failing to provide a

barge fit for the purpose contemplated by the Charter" or "by refusing to accept redelivery of the barge when tendered in the same condition as received[.]" Answer 9; *see Mai Steel*, 981 F.2d at 419 n.8; *Arrow Rd. Constr.*, 309 F.2d at 924–25. Until this Court determines the merits of Plaintiff and Defendant TWC's breach allegations, however, Plaintiff may proceed with its Miller Act claim against Defendant Endurance. As discussed below, Plaintiff may attempt to recover for the cost to repair the LOST PT., but not for lost profits or other damages for the time the barge was not actually used on the Project.

### a. Repairs to Capital Assets

Defendant Endurance argues that the cost to repair the LOST PT. is not recoverable because the barge is a capital asset and not a "material" under the Act, and because Plaintiff is repairing the barge for use on other projects. Plaintiff asks the Court to extend *Taylor Construction* and allow Plaintiff to pursue amounts due under the subcontract, and otherwise to follow the approaches taken in other circuits to hold Defendant responsible for the LOST PT.'s repair costs.

To start, the Court rejects Plaintiff's argument that *every* amount due under a subcontract is always recoverable from a Miller Act surety. Each contractual provision can only be enforced to the extent it is consistent with the Act. *Walton Tech.*, 290 F.3d at 1206.

The Court also rejects Defendant's contention that equipment provided for federal projects receives no protection from the Miller Act. *See Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 383 (1917). In *Illinois Surety Co.*, the surety objected to a claim "for rental of cars, track, and equipment" used on a federal project, and the Supreme Court held the surety's objection was "unfounded." *Id.* "The Surety Company contends that [renting equipment] is not supplying 'labor or materials.' The equipment was used in the prosecution of the work. Material was thus supplied." *Id.* Further, it stands to reason that if the Act allows recovery against a surety for the *use* of capital

assets, those assets would be protected when they are misused or damaged, as well. *See U.S. ex rel. Carter-Schneider-Nelson, Inc. v. Campbell*, 293 F.2d 816, 818–19 (9th Cir. 1961) (upholding Miller Act award of unpaid costs for time rented tractors were located on federal job sites). And as discussed above, Ninth Circuit precedent establishes that parties may recover contracted savings and contracted attorney's fees, which are similarly not "labor and material" in furtherance of a federal project. *See Taylor Constr.*, 163 F.3d at 1122; *Western Steel Co.*, 362 F.2d at 899.

Defendant asks the Court to deny damages for repairs to the LOST PT. by adopting the Tenth Circuit's reasoning in *Rent It*. There, the Tenth Circuit considered an earlier ruling in which it held that Miller Act sureties are liable for "current repairs of an incidental and comparatively inexpensive character which do not add substantially to the value of the equipment and compensate only for ordinary wear and tear[.]" *US ex rel. Rent It Co., Inc. v. Aetna Cas. & Ins. Co.*, 988 F.2d 88, 90 (10th Cir. 1993) (quoting *Cont'l Cas. Co. v. Clarence L. Boyd Co.*, 140 F.2d 115, 116 (10th Cir. 1944)) (internal quotations omitted). The *Rent It* court narrowed that rule to exclude damage caused by negligence. *Id.* Because the damage to the crane in *Rent It* was caused by the contractor's negligence and not ordinary wear and tear, the plaintiff could not recover under the Miller Act. *Id.*

Neither the Court nor the parties found a Ninth Circuit case on this issue, but at least five appellate courts have "imposed Miller Act liability for equipment repairs where, as here, the project could reasonably be expected to cause substantial consumption of the machinery or parts at issue." *Finch Equip. Corp. v. Frieden*, 901 F.2d 665, 668 (8th Cir. 1990) (citing *U.S. ex rel. J.P. Byrne & Co. v. Fire Ass'n of Philadelphia*, 260 F.2d 541, 543–45 (2d Cir. 1958); *Cont'l Cas. Co.*, 140 F.2d at 117; *Mass. Bonding & Ins. Co. v. U.S. ex rel. Clarkdale Mach. Co.*, 88 F.2d 388, 389–90 (5th Cir. 1937)); *see also Moran Towing Corp. v. M.A. Gammino Constr. Co.*, 363 F.2d 108, 115 (1st Cir. 1966) ("[I]n the case of rented equipment, not only does the surety's obligation

include the rental, but if the principal has undertaken to repair, or to assume the expense or ordinary wear and tear, its failure to perform in this respect may be a matter covered by the bond."). In *Finch Equipment*, liability attached to general contractors and their surety for repairs to a subcontractor's crane where another subcontractor "subjected the crane to heavy, but predictable use." *Id.* at 666. The crane became "inoperable from numerous broken or worn-out parts during its eighteen months of intensive use" on the project. *Id.* Similarly, in *Moran Towing*, the subcontractor's dump scows were damaged while carrying large, heavy breakwater stones. 363 F.2d at 109. The surety was liable for repairs to the scows because the damage "was not an unanticipated casualty" and the scows were considered to have been "consumed" during use, bringing them within purview of the Act. *Id.* at 116.

All told, every case cited above favors Plaintiff's claim to recover the costs to repair the LOST PT., assuming Plaintiff proves the damage and fault occurred during the Project. The Charter provided for Defendants' liability for repairs to the barge, and that provision is consistent with the Act's "intent to protect those whose labor and materials go into public projects." 290 F.3d at 1205 (internal quotations and citations omitted). Taking Plaintiff's allegations as true, the LOST PT. was damaged while being used for the Project. Requiring Defendant Endurance to cover the repair costs is consistent with the Act's purpose of protecting those who provide labor and materials for federal projects. Further, based on the facts available at this stage, and drawing inferences in Plaintiff's favor, TWC's negligence did not cause the damage. Indeed, the Project could reasonably be expected to subject the barge to heavy use, and the repairs will not add substantial value to the equipment. Plaintiff's claim for costs to repair the damaged LOST PT. may proceed.

### b. Post-Termination Expectation Damages

Defendant Endurance claims that it "cannot be responsible for any Charter hire [or] towage fees that accrued after Trade West ceased using the LOST PT." Motion 9. Defendant argues that, once TWC redelivered the LOST PT. to Plaintiff, the barge was no longer being used on the Project, so costs that accrued after redelivery are not covered by the Act. Plaintiff relies again on *Taylor Construction* and argues that because TWC agreed to pay Charter hire of the LOST PT. for one year, and failed to do so, Defendant Endurance is liable for that amount. Response 8. Plaintiff further contends that Ninth Circuit precedent provides that the barge rental costs are subject to the protections of the Miller Act. *Id.* at 5.

The damages Plaintiff incurred after TWC stopped using Plaintiff's barge are not recoverable from Defendant Endurance. Neither Plaintiff nor this Court found a Ninth Circuit case awarding expectation damages of the type sought here, where the parties terminated the contract and a subcontractor prematurely stopped providing labor and material. In fact, all four cases cited by Plaintiff on this point support Defendant's proposition that Miller Act damages are recoverable only for services actually rendered. *Ramona Equip. Rental, Inc. ex rel. U.S. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063, 1069 (9th Cir. 2014) (affirming damages award "for all the rental equipment *furnished . . . for construction of the project*") (emphasis added); *Walton Tech.*, 290 F.3d at 1203, 1207 (finding surety liable to subcontractor for unpaid rental fees for time equipment was used on federal project); *Carter-Schneider-Nelson*, 293 F.2d at 819 (upholding award of costs for time rented tractors were physically present at federal job sites); *U.S. ex rel. McAmis Indus. of Ore., Inc. v. M. Cutter Co.*, 130 F.3d 440, 440–41 (9th Cir. 1997) (affirming award of damages for time subcontractor's barges were in contractor's possession). Further, under *Mai Steel*, Plaintiff may not recover lost profits, because a subcontractor may only recover from a surety "costs *actually*

*expended* in furnishing the labor or materials in the prosecution of the work[.]" *Id.* at 417 (quoting *Millers Mut.*, 942 F.2d at 952) (emphasis in original; internal quotations omitted). Because Plaintiff stopped providing labor and material for the Project after TWC redelivered the LOST PT., the amount Plaintiff seeks to recover represents some combination of lost profits and costs for services not rendered, neither of which are recoverable from a Miller Act surety.

Nothing about this decision precludes Plaintiff from pursuing damages for breach of contract from Defendant TWC, but because those damages were not for labor or materials actually expended on the Project, Plaintiff may not recover those from Defendant Endurance as the Miller Act surety. *See Arthur N. Olive v. U.S. ex rel. Marino*, 297 F.2d 70, 72 (1st Cir. 1961) ("However, since the [Miller Act] was enacted to confer rights equivalent to those which would accrue under a lien where private construction is involved and since unrealized gain or profit for breach of contract cannot be recovered under such a lien, a subcontract should not be allowed to recover for loss of profits on the statutory bond under the Miller Act."). To the extent Plaintiff alleges such damages in its third claim for relief, those claims are DISMISSED.

### c. Post-Termination Consequential Damages

Finally, Defendant asks the Court to disallow consequential damages in the form of post-breach rental costs, because those costs "are not related to the furnishing of equipment for use on the jetty repair project." Motion 10. As noted above, the Charter provided that TWC was "obligated to redeliver the [LOST PT.] in the same good condition, repair and working order as upon delivery," and that "[TWC] shall continue to pay hire until such redelivery has been accomplished." *Id.* at 3. Under that provision, Plaintiff seeks damages for "ongoing charter hire while the Barge is being repaired," and argues again that "these amounts are owing under the subcontract" and recoverable under *Taylor Construction* and *Mai Steel*. Response 9, 12–13.

13 – OPINION AND ORDER

The Court again finds *Mai Steel* controlling on this issue. "A subcontractor may not recover from the surety . . . any lost profits," because "[a] claim for profits does not involve actual outlay and thus falls outside both the letter and the spirit of the Miller Act." 981 F.2d at 418 (internal quotations and citations omitted). Here, Plaintiff seeks to recover lost profits by charging Defendant Endurance for ongoing hire while the LOST PT. is being repaired, though the barge has not been used for the Project since TWC redelivered it to Plaintiff. Because the ongoing Charter hire "does not involve actual outlay" for the contracted Project, Plaintiff may not recover lost profits for foregone transactions outside the Project's scope. *Id.* To the extent Plaintiff pleads such damages in its Miller Act cause of action, those claims are DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendant Endurance's Motion to Dismiss, ECF No. 10, is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 21st day of October, 2024.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge