IN THE UNITED STATES DISTRICT COURT

THE DISTRICT OF OREGON

UNITED STATES OF AMERICA for the use and benefit of CURTIN MARITIME, CORPORATION, a California corporation,

    Plaintiff,

vs.

TRADE WEST CONSTRUCTION, INC., a Nevada corporation, ENDURANCE ASSURANCE CORPORATION, a Delaware corporation,

    Defendants.

_____

Case No. 6:24-cv-00810-MC

OPINION AND ORDER

MCSHANE, J.:

    Plaintiff Curtin Maritime Corporation (Curtin) entered into a bareboat charter agreement ("the Charter") providing a barge to Defendant Trade West Construction. Trade West utilized the barge—the "LOST PT."—to bring jetty rock from Long Beach, California to Coos Bay, Oregon for a federal construction project. Trade West executed a bond through Defendant Endurance for the Coos Bay North Jetty construction project. Curtin alleges that Trade West failed to return the LOST PT. in the same good condition, repair, and working order as it was upon delivery, and is financially responsible for the cost of any repairs to return the barge under the charter agreement. Trade West counters that Curtin breached the Charter in numerous ways, primarily by improperly conducting an Off-Hire Survey to determine any alleged damage to the LOST PT. caused by Trade West. The Parties filed cross-motions for summary judgment. Because genuine disputes of

1 – OPINION AND ORDER

material facts exist, Defendants' Motion for Partial Summary Judgment is DENIED in its entirety and Plaintiff's Motion is DENIED in part and GRANTED in part.

## BACKGROUND

In February 2022, Defendant Trade West Construction contracted with the United States Army Corps of Engineers to restore the Coos Bay North Jetty in Oregon (the "Project"). Leavitt Decl. 2, ECF No. 49. As part of the Project, the Miller Act required Trade West to provide a payment bond to secure the Project's contracts. 40 U.S.C. § 3131. Trade West executed a Performance Bond and a Payment Bond through Defendant Endurance. On or about January 24, 2023, Trade West entered into a Standard Bareboat Charter ("Charter") and a Standard Towage Agreement for tug and barge services with Plaintiff Curtin. Leavitt Decl. Ex. 1, at 6, ECF No. 49.

The Charter and Towage Agreement required Curtin to provide the LOST PT. and DEBRA C. for Trade West's use on the Project. Henderson Decl. Ex. 2, at 1, ECF No. 44. The Charter required Trade West to pay the hire cost of the LOST PT. at a rate of $4,000 per day for the duration of the Charter Term. *Id*. The Charter also provided that Trade West was "obligated to redeliver the [LOST PT.] in the same good condition, repair and working order as upon delivery," excluding "ordinary wear and tear," and that "[Trade West] shall continue to pay hire until such redelivery has been accomplished." *Id*. at 3.

To determine the whether the barge was damaged during the Charter Term, the Charter required the parties to conduct On-Hire and Off-Hire surveys. *Id*. at 2. The Charter stated that the surveys "shall be conclusive between the parties with respect to the condition of the Vessel at the time" of delivery and redelivery. *Id*. While the Charter permitted the parties to "agree upon any appropriate method by which to survey" the LOST PT. for the On-Hire Survey, it required the

2 – OPINION AND ORDER

"same method" be used for the Off-Hire Survey. *Id*. The Charter did not require the same "person" conduct both surveys. *Id*.

Curtin and Trade West selected Duncan Shoemaker & Associates ("DSA") to perform the On- and Off-Hire surveys. Henderson Decl. Ex. 4, at 4–5; Webster Decl. Ex. 3, at 8–9, ECF No. 43. DSA published the On-Hire Survey on May 3, 2023. Henderson Decl. Ex. 6, at 1. In the On-Hire Survey report, DSA states it was instructed to "comment on external conditions." *Id*. at 2. The report was based only on visual inspection. *Id*. The report described the LOST PT.'s main deck as being in "satisfactory condition[.]" *Id*. at 7. The On-Hire Survey does not identify damage within the below-deck tanks, nor does it report unrepaired buckling of the bulkheads. *Id*. at 8–23.

After the LOST PT.'s second voyage for the Project, Curtin inspected the barge and reported to Trade West that it found the "centerline longitudinal bulkhead to be buckled" and "a few transverse bulkheads buckled." Henderson Decl. Ex. 9, at 1. In a June 28, 2023 email to Trade West, Curtin suggested it would be economical and efficient to use Light Detection and Ranging ("LiDAR") scans to survey possible damage to the LOST PT. for mid-Charter Term repairs. Henderson Decl. Ex. 12, at 2. Andy Leavitt, an employee of Trade West replied, "I agree[.]" *Id*.

On November 14, 2023, Trade West returned the LOST PT. to Curtin after the barge's sixth voyage. Leavitt Decl. 2, ECF No. 41. Curtin emailed DSA requesting an Off-Hire Survey. Henderson Decl. Ex. 14, at 5–6. The email mentioned "several areas of damage that will require repair" before the LOST PT. could be "returned." *Id*. at 5. Curtin also sent DSA, Trade West, and Nordholm Companies, Inc. a shared folder containing screenshots of the LiDAR scans taken of the LOST PT. during the Charter Term. *Id*. at 3.

On December 14 and 15, DSA conducted the Off-Hire Survey. Henderson Decl. Ex. 15, at 3. The report was published on December 27, 2023. *Id*. at 1. The Off-Hire Survey found "extensive

3 – OPINION AND ORDER

buckling or deformation in 27 of the LOST PT.'s 33 tanks which was not present during the on-hire survey." Shoemaker Decl. 5, ECF No. 56. While the On-Hire Survey mentioned DSA was instructed to comment on external conditions, the Off-Hire Survey stated DSA was instructed to comment on "internal and external structural conditions found." Henderson Decl. Ex. 6, at 2; Henderson Decl. Ex. 15, at 3.

The Off-Hire Survey also reported that DSA was provided with LiDAR renderings of each tank space. Henderson Decl. Ex. 15, at 4. The Off-Hire Survey articulated that the LiDAR scan representations were "generally consistent" with DSA's observations of newly observed damage to the internal tanks, including buckling of the bulkheads and deck distortions. *Id*. at 4–11. Later in the Off-Hire Survey, DSA stated: "Subsequent review of the Lidar renderings appeared to correlate with our findings, however, an exact comparison was not made." *Id*. at 6.

In February 2024, Travelers Property Casualty Company of America—Trade West's insurer—contacted DSA to perform an additional survey of the LOST PT. Shoemaker Decl. 5. On February 13 and 14, 2024, DSA conducted the inspection. *Id*. DSA's surveyor once again found repairs were necessary for buckling and deformation of the bulkheads and deck longitudinals. *Id*. There have been no repairs to the LOST PT. since at least January 2024. Reilly Decl. Ex. 2, at 4, ECF No. 39.

**STANDARD**

On a motion for summary judgment, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine" dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute is considered

4 – OPINION AND ORDER

"genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

## DISCUSSION

Curtin alleges that Trade West breached the Charter and Towage Agreement by returning the LOST PT. in damaged condition. Compl. 2. Curtin argues that, under the Charter terms, Trade West is accountable for hire of the LOST PT. until the vessel is "restored to the same good condition, repair and working order, less ordinary wear and tear." *Id.* (quoting the Charter). Curtin further alleges that Trade West "has failed to pay at least eleven outstanding invoices for CMC's tug and barge services: five invoices under the Charter, and four invoices under the Towage Agreement. All costs are currently in excess of $1,139,427.91, with interest and hire continuing to accrue." *Id.*

Curtin brings three causes of action: two alleging a breach of the Charter and Towage Agreement against Trade West, and one alleging Miller Act liability against Endurance as Trade West's surety. Compl. 4–5.

In response, Trade West "[d]en[ies] that the LOST PT. suffered damage beyond normal wear and tear while under the Bareboat Charter to Trade West," and alleges that a survey performed at Trade West's request shows the LOST PT. was damaged at the time Trade West took possession. Defs.' First Am. Answer 3, ECF No. 31 ("FAA"). Trade West asserts six counterclaims and nine affirmative defenses. FAA 5–13.

**I.     The Charter**

5 – OPINION AND ORDER

The Standard Bareboat Charter (LOST PT.) and Standard Towage Agreement (DEBRA C.) are maritime contracts.[1] To prevail on a claim for breach of a maritime contract, Curtin must prove: (1) the existence of a contract; (2) breach of the agreement; and (3) damages. *Holcim Canada Holdings LLC v. Barge Eagle, Inc.*, 737 F. Supp. 3d 1106, 1110 (W.D. Wash. 2024). "Basic principles in the common law of contracts readily apply in the maritime context." *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013) (underscoring that the Ninth Circuit looks to the Restatement (Second) of Contracts to determine the basic elements of contract law). In general, contract interpretation poses a mixed question of law and fact. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985). However, it is a question of law when the court's analysis focuses on the "contractual language and an application of the principles of contract interpretation[.]" *Id*.

Maritime contract terms should be given their ordinary meaning; the plain language of the agreement should be considered first. *Starrag v. Maersk, Inc.*, 488 F.3d 607, 616 (9th Cir. 2007) (*quoting Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "Only if the language is ambiguous—reasonably susceptible to more than one interpretation— should a court examine extrinsic evidence and look beyond the written language of the contract" to discern the parties' intent. *Anderson v. City of Seward*, 475 F. Supp. 3d 986, 991 (D. Alaska 2020).

The Charter's language is unambiguous. The Charter states the Charter Term shall "continue until the Vessel has been redelivered to Owner as set forth below." Henderson Decl. Ex.

---

[1] See *Lieblong v. Abella*, 503 F. Supp. 3d. 1011, 1016 (D. Haw. 2020) (finding that a bareboat charter party is a maritime contract; see also *Brusco Tug & Barge, Inc. v. St. Paul Fire & Marine Ins. Co.*, 897 F. Supp. 2d 1048, 1052 (W.D. Wash. 2012) (citing *Sundance Cruises Corp. v. American Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir. 1993) (holding that a contract relating to a ship is a maritime contract). The Charter also provides that it is governed by United States maritime law. Henderson Decl. Ex. 2, at 6.

6 – OPINION AND ORDER

2, at 1. The Charter requires On-Hire and Off-Hire surveys. *Id*. at 2. The surveys "shall be conclusive between the parties with respect to the condition of the Vessel" at the time of delivery and redelivery, respectively. *Id*. The Charter demands that the On- and Off-Hire surveys be conducted upon the same "method." *Id*. "Redelivery shall not occur until the Vessel has been restored to the same good condition, repair and working order, less ordinary wear and tear, as upon delivery, and Charterer shall continue to pay hire until such redelivery has been accomplished. *Id*. at 3. In summary, the difference in condition between the surveys—less ordinary wear and tear—determines the amount Trade West owed Curtin for repairs at the time of redelivery. And the LOST PT. is not properly redelivered until it has been restored to the same good condition as documented in the On-Hire Survey. *Id*. at 3.

The term "method" in the Charter is central to the parties' dispute. While the Charter itself does not contain its own definition of "method," it plainly lays out how the term would be defined as applied to the On- and Off-Hire surveys. "Owner and Charterer may agree upon any appropriate method by which to survey the Vessel. . . but any method agreed must include written and photographic documentation." *Id*. at 2. To be conclusive with respect to Trade West's obligation to redeliver the LOST PT. in the same good condition as upon delivery, the Charter demands that an Off-Hire Survey be conducted using the same method as the On-Hire Survey. It is therefore unambiguous that the parties intended for the method used in the On-Hire Survey to define the term "method" in the Charter. *Id*. at 3 ("an off-hire survey of the Vessel shall be conducted upon the same method utilized for the on-hire survey, to establish the condition of the vessel for purposes of redelivery.").

Finally, the Charter is a fully integrated agreement. "Whether a maritime contract is integrated is a question of fact to be decided based on all available evidence." *NextWave Marine*

7 – OPINION AND ORDER

*Systems, Inc. v. M/V Nelida*, 488 F.Supp 3d. 1004, 1011 (D. Or. 2020). Trade West points to *NextWave Marine Systems, Inc.* as an example of a factual dispute as to whether a maritime contract was integrated. Importantly, though, the agreement in *NextWave* lacked an integration clause and included provisions written like a wish-list. *Id*. Unlike the contract in *NextWave*, where the court found the agreement was not integrated, the Charter here has an integration clause. *Id*. The Charter plainly states that it "supersedes all prior and contemporaneous communications" between the parties. Henderson Decl. Ex. 2, at 6. The Charter is fully integrated, and the undisputed facts show no evidence to the contrary.

## II.     Trade West's Motion for Partial Summary Judgment

### A.    Curtin's Breach of Contract Claim

Trade West moves for partial summary judgment on Curtin's breach of contract claim. Defs.' Mot. Summ. J. 5, ECF No. 38. Trade West argues that Curtin cannot prove Trade West breached the Charter by returning the LOST PT. in worse condition than it received it because the Off-Hire Survey is not conclusive or binding. *Id*. at 21. Trade West alleges that the Off-Hire Survey is not conclusive because it was not performed using the same method as the On-Hire Survey, as the Charter demands. *Id*. Trade West further alleges that Curtin breached the redelivery provision of the Charter by not pursuing one of the two provided methods of recovering for damage after return of the barge. *Id*. at 26. Because a material dispute of fact exists as to whether the On-Hire and Off-Hire surveys were performed using the same method, as required by the Charter, Trade West's Motion is DENIED.

While the Charter's terms are unambiguous, the facts applied to the contract are unsettled. Chiefly, it remains disputed whether the LiDAR scans were used in a manner that altered the Off-Hire Survey method in comparison to the On-Hire Survey. Trade West points to the reference of

LiDAR scans in the Off-Hire Survey. FAA 9. There is no indication, nor does any party suggest, that LiDAR scans were used in the On-Hire Survey. In the Off-Hire Survey, DSA reports it was "informed that Curtin Maritime had performed LiDAR scans of the barges' internals, copies of which were provided to us to assist in determining the exact extent/scope of damage." Henderson Decl. Ex. 15, at 3. However, the Off-Hire Survey also indicates LiDAR scans were reviewed *after* visual inspection of damage. *Id*. at 4, 6 ("The representations were generally consistent with our visual observations of the internal tank conditions. . .") ("Subsequent review of the Lidar renderings appeared to correlate with our findings, however, an exact comparison was not made."). Duncan Shoemaker, DSA's Managing Partner at the time of the Off-Hire Survey, declared that he "understands that" the DSA surveyor who performed the Off-Hire assessment did not "use or otherwise rely on the LiDAR scans to conduct the off-hire survey." Shoemaker Decl. at 2, 5.

A reasonable trier of fact could find that the On-Hire and Off-Hire surveys were the products of the same surveying method. Trade West has not sufficiently demonstrated that the Off-Hire surveyor relied on the LiDAR scans in any substantial manner, let alone in a way that would depart from the On-Hire Survey method. It would be reasonable to find that the surveys adhered to the Charter terms, that Curtin therefore did not breach the Charter, and that Trade West is liable for some—if not all—of the new damage identified in the Off-Hire Survey.

Additionally, the Charter simply states that the LOST PT. is not considered redelivered until it is returned in the same condition as it was delivered to Trade West. Henderson Decl. Ex. 2, at 3. Trade West is obligated to pay hire until such redelivery is accomplished. *Id*. As discussed above, the parties dispute whether and to what extent the LOST PT. was returned with damage earned during the Charter Term. If a trier of fact finds that the Off-Hire Survey followed the Charter terms and therefore is conclusive of the vessel's condition, it would be reasonable to find

9 – OPINION AND ORDER

that Curtin did not violate its Charter obligations by charging Trade West for hire until the barge is redelivered.

Whether the On-Hire and Off-Hire surveys were conducted using the same method is a factual dispute. Because there is a genuine dispute of material fact, Trade West's Motion for Partial Summary Judgment is denied.

### III. Curtin's Motion for Summary Judgement[2]

A. <u>Breach of Bareboat Charter Counterclaim</u>

Trade West's first cause of action alleges that Curtin breached the Charter in numerous ways, including by (1) failing to provide a barge fit for the purpose contemplated by the Charter and (2) using a different method for the On- and Off-Hire surveys. FAA 10–11. Curtin moves for partial summary judgment on these two theories of the first counterclaim arguing that no genuine dispute of material fact exists for these allegations because the Charter terms are unambiguously in its favor. Alternatively, Trade West argues the existence of two factual disputes: (1) whether the Charter is integrated; and (2) whether Curtin misrepresented the condition of the barge. Defs.' Resp. 25.

The Charter, in three provisions, disclaims any representations or warranties regarding the capability, condition, seaworthiness, fitness, or suitability of the barge. Henderson Decl. Ex. 2, at 1. The Charter's "On-Hire Survey" and "Delivery" provisions further underscore this understanding. *Id*. at 2–3 ("The on-hire survey shall be conclusive between the parties with respect to the condition of the Vessel at the time of delivery to the Charterer."); ("Charterer shall not thereafter be entitled to claim against Owner on any basis whatsoever, including without limitation unseaworthiness of the Vessel, negligence of the Owner, latent defect or condition, or any

---

[2] Trade West and Curtin stipulate to the dismissal of Defendants' fifth and sixth causes of action. Defs.' Resp 23 f.3.

10 – OPINION AND ORDER

representation or warranty, express or implied, with respect to the Vessel."). The purpose of the Charter is clear by its terms: Curtin would provide a boat as-is to Trade West for the Project, and Trade West would pay for any damage accrued during the Charter Term upon redelivery. Because Trade West fails to provide compelling evidence showing how Curtin breached the Charter's contemplated purpose, Curtin's motion for partial summary judgment is granted as to this theory.

As previously discussed, a genuine dispute of material fact exists as to whether the Off-Hire Survey used a different method than the On-Hire Survey. Based on the existing record, reasonable minds could differ on whether the use of the LiDAR scans altered the Off-Hire Survey method. Curtin's motion for partial summary judgment as to this theory is denied.

B. Breach of the Implied Duty of Good Faith and Fair Dealing Counterclaim

Maritime contracts impose a duty of good faith and fair dealing in its performance and enforcement. *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 913 (9th Cir. 2003). Trade West alleges Curtin breached the implied covenant of good faith and fair dealing. FAA 6. Trade West offers five theories: (1) Curtin knowingly failed to provide a barge fit for the purpose contemplated by the Charter; (2) Curtin used a different Off-Hire Survey method than required by the Charter; (3) Curtin refused to accept redelivery of the barge when returned in the same condition as it was received; (4) Curtin demanded that Trade West pay for repair of "Existing Damage" to the barge incurred before the Charter term; and (5) Curtin demanding hire and towage fees until Trade West pays to repair "Existing Damage" to the barge incurred before the Charter term. FAA 11.

The first theory fails because, as previously discussed, no reasonable trier of fact could find that Curtin failed to provide a barge fit for the purpose contemplated by the Charter. Trade West points to no convincing evidence of bad faith from Curtin in the Charter drafting process.

The Charter does not contemplate a purpose beyond chartering the LOST PT. to Trade West as-is. Curtin's Motion as to this theory is granted.

The remaining four theories are dependent on whether the Off-Hire Survey is conclusive of Trade West's obligation to pay Curtin for any new damage. Because these allegations rely on the disputed fact of whether the Off-Hire Survey's method differed from the On-Hire Survey, Curtin's Motion as to these theories is denied.

C. Failure of Consideration Counterclaim

In their third cause of action, Trade West alleges that Curtin failed to provide adequate consideration under the Charter and Towage Agreement because it delivered a damaged and "unseaworthy" barge. FAA 12. Curtin responds by underscoring failure of consideration is appropriate as an affirmative defense, not a claim. Pl.'s Mot. 19. Further, Curtin once again asserts that the Charter plainly disclaims any warranties for the barge. *Id*. Section 7(A) of the Charter states, "Acceptance of the Vessel by Charterer at the time of such tender or otherwise shall constitute delivery and Owner's full performance under the agreement." Henderson Decl. Ex. 2, at 2. Again, the LOST PT. was chartered to Trade West "AS-IS[,]" and that the On-Hire Survey performed prior to delivery of the barge is conclusive of its condition. *Id*. at 1–2. Because the Charter is fully integrated and disclaims warranties or representations of seaworthiness, condition, capability, fitness, or suitability, Curtin's Motion for this theory is granted.

D. Misrepresentation Counterclaim

Finally, Trade West's fourth cause of action alleges that Curtin: (1) misrepresented the condition of the LOST PT. to Trade West during pre-Charter negotiations; (2) misrepresented the condition of the LOST PT. in the Charter; and (3) misrepresented the methods of the On- and Off-Hire surveys. FAA at 12. Curtin once again seeks refuge in the Charter's warranties and integration

provisions, while Trade West continues to claim the Charter is not fully integrated. Pl.'s Resp. 20; Defs.' Resp. 25. The text of the Charter defeats Trade West's efforts.

First, the Charter is fully integrated and disclaims warranties and representations made in previous communications between the parties. Henderson Decl. Ex. 2, at 6. Second, the Charter makes no representation about the condition of the LOST PT. The agreement specifically identifies the On-Hire Survey as the conclusive determination of the vessel's condition. *Id*. at 2. The vessel is offered on an "AS-IS" basis. *Id*. Trade West offers no evidence to suggest how Curtin misrepresented the condition of the barge anywhere in the text of the Charter. The On-Hire Survey is the conclusive authority of the barge's condition at the start of the Charter Term. Because the express terms of the Charter make no representation of the barge's condition, the Curtin's Motion as to the first two theories is granted.

Because there is a genuine dispute of fact as to whether the On- and Off-Hire surveys were conducted using different methods, Curtin's Motion as to the third theory is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion (ECF No. 38) is DENIED, and Plaintiff's Motion (ECF No. 42) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 3rd day of November, 2024.

_____/s/ Michael McShane\_\_\_\_\_
Michael McShane
United States District Judge

13 – OPINION AND ORDER